```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

John C. Ruiz-Bueno, III, et al.,:
                                            Case No. 2:12-cv-0809
    Plaintiffs,        :
                                            JUDGE GREGORY L. FROST
   v.                      :
                                            Magistrate Judge Kemp
Zach Scott, et al.,       :

    Defendants.        :


                        OPINION AND ORDER

This wrongful death case is before the Court to resolve three additional discovery-related motions not addressed in the Court's Opinion and Order dated November 14, 2013 (Doc. 139). They are: (1) defendants' motion to compel production of medical records, filed on August 14, 2013 (Doc. 95); (2) defendants' motion to withdraw that motion due to production of those records (filed as a notice of withdrawal of the motion)(Doc. 116); and (3) plaintiffs' objection to the withdrawal, coupled with (although not as a separately-filed motion) a request for attorneys' fees (Doc. 117).  For the reasons which follow, defendants will be permitted to withdraw their motion to compel without being sanctioned.

                           I.   Introduction

A brief description of the procedural history of the case is required in order to place these three matters in their proper context.

According to the motion to compel, defendants served plaintiffs with interrogatories and document requests asking for information about the decedent, Edward Peterson.  The motion asserted that "Plaintiffs have failed to respond, without justification, to Defendants' interrogatories and requests for

production ...." (Doc. 95, at 2). It then notes that plaintiffs actually agreed to produce such information, but only if defendants agreed to a protective order governing its use and disclosure. Defendants' motion took the position that the protective order proposed by plaintiffs "imposes an entirely unnecessary and superfluous framework of rules and oversight as to routine discovery," id. at 3, but defendants did not propose an alternative order. Rather, they stated that "Plaintiffs cannot condition ... release [of medical information] on submission to additional rules and protections" because plaintiffs conceded that the information was relevant and because the filing of the case waived any applicable physician-patient privilege. Although defendants appeared to acknowledge that medical records can contain sensitive or embarrassing personal and private information, they claimed in their motion that such information is sufficiently protected by "[t]he rules of civil procedure, ethical rules, and general tenets of professionalism" and that "[n]o other protection is necessary." Id. at 6.

 The Court conferred with counsel about this motion on August 23, 2013. At the conference, the Court suggested that a standard stipulated protective order might be appropriate and directed the parties to confer concerning such an order. By then, the motion had been fully briefed. Although the Court was initially advised that the parties were unable to reach an agreement on the fundamental issue of whether a protective order was appropriate - defendants argued that a simple confidentiality agreement would suffice - the parties eventually submitted an agreed protective order (Doc. 113) and defendants then attempted to withdraw their motion to compel. Plaintiffs contend that the motion never should have been filed and that they should be awarded attorneys' fees for having had to brief the motion. They argue that to allow a party to file a meritless discovery motion and then to

withdraw it after briefing but before the Court rules is an abuse of the judicial process, calling for sanctions.

## II. Discussion

The Court chooses to resolve this matter in relatively brief fashion. Rather than determine, in this situation, if sanctions are available either under Fed.R.Civ.P. 26(c)(3) (which incorporates the standard for awarding fees found in Rule 37(a)(5)) or under the Court's inherent power, the Court will simply assume that it has the power to sanction defendants for their conduct. The question then becomes whether such sanctions should be imposed.

This is not an easy question. The premise of defendants' motion to compel - that relevant, discoverable and nonprivileged information must be produced without any additional conditions attached to its disclosure - represents a serious misreading of Fed.R.Civ.P. 26(c). Some types of protective orders may be granted on grounds that information being sought by an opposing party is simply not discoverable. That (among other reasons) might justify an order of the type referred to in Rule 26(c)(1)(A) "forbidding the disclosure or discovery...." However, most of the orders described in Rule 26(c) deal with the discovery of relevant, discoverable and nonprivileged information upon specified conditions. Thus, the Rule allows the Court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" such as an order "specifying terms ... for the disclosure or discovery" - language which makes no sense except in cases where the disclosure or discovery is relevant. Thus, to say flatly that neither a party nor the Court may attach conditions to the production of otherwise relevant and nonprivileged information is simply wrong. See also Seattle Times Co. V. Rhinehart, 467 U.S. 20, 35-36 (1984), where the Supreme Court recognized that

"discovery ... may seriously implicate privacy interests of litigants" and that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."

If defendants' motion did not move beyond that point, a good case could be made for the imposition of sanctions on grounds that defendants' position was not "substantially justified" as required by Rule 37(a)(5)(A)(ii).  However, in their reply memorandum, defendants tempered their position to some extent, arguing that plaintiffs' privacy concerns could be addressed through a confidentiality agreement rather than a protective order.  Defendants also suggested, in their motion, that in the experience of their counsel, protective orders were not routinely put in place to cover the disclosure of medical information.

Perhaps a more thorough review of federal case law would have permitted counsel to determine that, in fact, such protective orders are routinely agreed to or imposed by federal courts in cases where sensitive medical information is at issue.  The typical way for parties to handle the production of any type of sensitive information - personal or commercial - is through what many courts have described as a "blanket" protective order.  "Blanket protective orders routinely are approved by courts in civil cases, frequently on the stipulated request of the parties."  <u>Gillard v. Boulder Valley School Dist. Re.-2</u>, 196 F.R.D. 382, 386 (D. Colo. 2000).  Such orders place the burden on the producing party to act in good faith in designating information as confidential, and allow for disputes over the propriety of that designation to be resolved by the Court if the parties cannot agree.  The most important feature of such orders, however, is that they permit discovery to move forward without unnecessary delay.  In more complex cases, such orders have been described as "essential to the functioning of civil discovery."

Bayer AG and Miles, Inc. v. Barr Laboratories, Inc., 162 F.R.D. 456, 465 (S.D.N.Y. 1995).

Such protective orders are agreed to, or issued, in a wide variety of cases. Although both Gillard and Bayer were decided in the commercial context, courts have issued protective orders for personnel files which contain medical information, see Duling v. Gristede's Operating Corp., 266 F.R.D. 66 (S.D.N.Y. 2010), and in medical products litigation where "a substantial amount of sensitive material, including medical records and trade and proprietary information, has been produced for discovery purposes." In re Zyprexa Injunction, 474 F.Supp. 2d 385, 421 (E.D.N.Y. 2007). The order in that case was described as "essential to protecting litigants from the embarrassment and oppression that would result from unnecessary pretrial public disclosure of their private information." Id; see also Haas v. Golding Transport, Inc., 2010 WL 1257990, *8 (M.D.N.C. March 26, 2010)(concluding that "blanket protective orders constitute an appropriate means for dealing with privacy and related concerns" and approving such an order to cover, among other things, "medical and financial information," areas which "implicate privacy and other interests of the sort Rule 26(c) exists to protect"). The bottom line is, as the Court in United States v. Carriles, 654 F.Supp. 2d 557, 568 (W.D. Tex. 2009) observed, that "[t]he use of protective orders to prevent disclosure of private medical information is ... clearly established." This Court has generally followed that practice. See, e.g., Hawkins v. Anheuser-Busch, Inc., 2006 WL 2422596 (S.D. Ohio Aug. 22, 2006)(ordering production of plaintiff's medical records subject to restrictions on their use and dissemination).

Defendants argue, however, that some of the medical information about Mr. Peterson is already contained in public records. To the extent that is so, a protective order as to that

information, or similar information, would seem to be of little value because any privacy interests in keeping such information from the public may already have been compromised.  That does not seem to be the main thrust of defendants' motion, though.  It is mostly premised on what the Court perceives as a narrow view of the use and scope of protective orders in litigation involving medical issues.  The fact that most states provide a privilege for such information by statute, and that the Supreme Court has acknowledged a constitutional dimension to "the individual interest in avoiding disclosure of personal matters," see Whalen v. Roe, 429 U.S. 589, 599 (1977), suggests that the privacy interest in personal medical information should not be taken lightly even when disclosure of medical information is, as here, vital to an opposing party's defense of a medical claim.  Nevertheless, the Court declines to sanction defendants for advancing, in apparent good faith, an argument that a protective order in this situation represents a type of "overkill" which could be avoided through lesser, but still effective, ways of protecting whatever privacy interests might be implicated by revelation of the information in question.  Defendants will therefore be permitted to withdraw their motion without facing sanctions.

### III.  Order

Based on the foregoing, defendants' request (Doc. 116) to withdraw their motion for a protective order (Doc. 95) is granted and both motions shall be removed from the Court's pending motions list.  Plaintiffs' request for attorneys' fees, not filed as a separate motion but contained within Doc. 117, is denied.

### IV.  Motion for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A),

Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

     This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

                                          /s/ Terence P. Kemp
                                          United States Magistrate Judge