UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN C. RUIZ-BUENO, III, et al.,

          Plaintiffs,                   Case No. 2:12-cv-809
                                           CHIEF JUDGE EDMUND A. SARGUS, JR.
    v.                               Magistrate Judge Terence P. Kemp

ZACK SCOTT, et al.,

          Defendants.

### OPINION AND ORDER

This matter is before the Court on Defendant Douglas Edgington's Motion for Attorney's Fees [ECF No. 246] under 42 U.S.C. § 1988(b) and 28 U.S.C. § 1927. For the following reasons, that Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.

This case began in September 2012 following the death of Edward Peterson, who died while incarcerated at the Franklin County Correctional Center II ("FCCC"). (Oct. 16, 2014 Op. & Order at 2 [ECF No. 242].) Plaintiffs, the administrator of Peterson's estate and Peterson's son, brought a claim for Eighth Amendment violations under 42 U.S.C. § 1983, as well as state-law claims for negligent provision of medical care, wrongful death, and loss of consortium. (*Id.*) Plaintiffs named 54 defendants in their action, all of whom were employees of the Franklin County Sheriff's Office ("FCSO") who worked in the FCCC section where Peterson was confined. (*Id.*) In its October 16, 2014 Opinion and Order on Defendants' motions for summary judgment, the Court dismissed Plaintiffs' claims against all but two individuals, Deputies Seth Nibert and Randall Hoar. (*See id.* at 36–37.) The Court allowed Plaintiffs to maintain their § 1983 Eighth Amendment claim, state-law wrongful death claim, and loss of consortium claim

against those deputies. (*Id.*) On appeal, the Sixth Circuit partially reversed this Court, concluding that the Court should have granted summary judgment on all claims as to all Defendants, including Nibert and Hoar. (Sixth Circuit Decision at 2 [ECF No. 259].)

Defendant Edgington was the facility commander at FCCC at all times relevant to Plaintiffs' claims. (Oct. 16, 2014 Op. & Order at 28.) Plaintiffs alleged that he was liable under § 1983 and state law because he failed to clean Peterson's cell, failed to adequately supervise subordinates, and failed to enter the common areas of single cells to observe his subordinates' work. (*See id.* at 8.)

The Court granted summary judgment in Edgington's favor in its October 16 Order. (Oct. 16, 2014 Op. & Order at 29, 35–36.) To prevail on their § 1983 claim, Plaintiffs needed to establish either (a) that Edgington encouraged, authorized, approved, or knowingly acquiesced in the unconstitutional conduct of a subordinate or (b) that Edgington directly caused the constitutional violation through the active performance of his duty (i.e., that Edgington acted with deliberate indifference (knew of and disregarded a risk of serious harm to Peterson)). (*See id.* at 13–14, 26, 29.) In defense of their § 1983 claim, Plaintiffs attempted to point out "[i]ssues of fact" as to "whether Mr. Edgington is liable for negligent performance of ministerial duties." (Mem. in Opp'n to Edgington's Mot. for Summ. J. at 1 [ECF No. 216].) The Court disposed of this argument, explaining:

> Plaintiffs argue that certain Defendants were performing ministerial duties such that an exception to qualified immunity applies; however, an exception to a defense such as qualified immunity does not establish an underlying Eight Amendment violation. Plaintiffs' suggestion in their briefs that certain Defendants' failure to perform ministerial duties establishes a § 1983 claim is an incorrect statement of law.
>
> . . . .
>
> Plaintiffs' argument . . . is irrelevant to the question of whether Defendant

2

Edgington acted with deliberate indifference to a sufficiently serious
constitutional deprivation.

(Oct. 16, 2014 Op. & Order at 14, 28–29.) According to Plaintiffs, "[q]uestions of fact also

remain[ed] regarding whether . . . Edgington acted with recklessness or deliberate indifference."

(Mem. in Opp'n to Edgington's Mot. for Summ. J. at 1.) The Court again rejected Plaintiffs'

position:

> Plaintiffs . . . offer three arguments in support of their position that
> Defendant Edgington acted with deliberate indifference: that Defendant
> Edgington "was ultimately responsible for cell cleanliness prior to Mr. Peterson's
> death," that Defendant Edgington "Abandoned his duties as facility commander
> [relating to the cleanliness of Mr. Peterson's cell] by pawning them off to a
> secretary," and that "a widespread pattern of misconduct indicates that Mr.
> Edgington should have been aware of the situation if he actually performed his
> job." None of these arguments comes close to suggesting that Defendant
> Edgington caused a constitutional violation such that he can be liable under §
> 1983. Plaintiffs do not even attempt to offer evidence that Defendant Edgington
> knew of a substantial risk of harm to Peterson (indeed, they fail to tie the
> cleanliness issue to any risk of harm of which any Defendant was aware) and
> consciously disregarded that risk. Nor do Plaintiffs attempt to offer evidence that
> Defendant Edgington encouraged, authorized, approved, or knowingly acquiesced
> in unconstitutional conduct by his subordinates.

(Oct. 16, 2014 Op. & Order at 29 (internal citations omitted).)

Moving to Plaintiffs' state-law claims against Edgington (and the other Defendants), the

Court stated:

> Defendants argued in their motions that the negligent provision of medical care
> claim is simply a medical malpractice claim, which cannot lie against these
> Defendants (none of whom are medical professionals). Defendants also argued
> that they cannot be liable for wrongful death because none of their actions
> proximately caused Peterson's death, and that Plaintiffs' claim for loss of
> consortium is derivative of the other state law claims and therefore must fail as
> well. Plaintiffs did not respond to any of these arguments.
>
> Defendants offered the alternative argument that they are immune from
> liability for Plaintiffs' state law claims pursuant to Ohio Revised Code §
> 2744.03(A)(6). In response, Plaintiffs argued that Defendants acted "with
> malicious purpose, in bad faith, or in a wanton or reckless manner" to Peterson's
> medical needs such that the exception to immunity set forth in Ohio Revised Code

§ 2744.03(A)(6)(b) applies. Plaintiffs do not offer any arguments in support of their state law claims independent of their arguments in support of their Eighth Amendment § 1983 claims.

Having found that there exist no genuine issues of material fact as to whether all Defendants other than Nibert and Hoar acted with deliberate indifference to Peterson's serious medical needs, the Court likewise concludes there exist no genuine issues of material fact as to whether all Defendants other than Nibert and Hoar acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" to Peterson's medical needs. As such, the Court agrees with Defendants that Ohio Revised Code § 2744.03(A)(6) immunizes all Defendants other than Nibert and Hoar from liability on Plaintiffs' state law claims.

(*Id.* at 34–35.)

Having prevailed on summary judgment, Edgington now moves for attorney's fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927. (Mot. for Att'y Fees at 1 [ECF No. 246].)

## II.

### A.    Attorney's Fees Under 42 U.S.C. § 1988(b)

Section 1988(b) allows for the award of "a reasonable attorney's fee" to the prevailing party in various kinds of civil rights cases, including suits brought under § 1983. 42 U.S.C. § 1988(b). A prevailing defendant may obtain attorney's fees under § 1988(b) "'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation,'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)), "or that the plaintiff continued to litigate after it clearly became so," *Christiansburg*, 434 U.S. at 422. "In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22. As the Supreme Court has noted, "the course of litigation is rarely predictable." *Id.* at 422. "Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the

4

outset, a party may have an entirely reasonable ground for bringing suit." *Id.* Awarding

attorney's fees "against a nonprevailing plaintiff in a civil rights action is 'an extreme sanction,

and must be limited to truly egregious cases of misconduct.'" *Garner v. Cuyahoga Cnty.*

*Juvenile Court*, 554 F.3d 624, 635 (6th Cir. 2009) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225,

1232 (6th Cir. 1986)).

An important caveat to attorney's fees under § 1988(b): the section "allows a defendant

to recover reasonable attorney's fees incurred because of, but only because of, a frivolous

claim." *Fox* 563 U.S. at 836. Stated as a but-for test: "Section 1988 permits the defendant to

receive only a portion of his fees that he would not have paid but for the frivolous claim." *Id.*

Thus, "if a frivolous claim occasioned the attorney's fees at issue, a court may decide that the

defendant should not have to pay them. But if the defendant would have incurred those fees

anyway, to defend against *non*-frivolous claims, then a court has no basis for transferring the

expense to the plaintiff." *Id.*

Edgington contends that attorney's fees under § 1988(b) are appropriate here because (i)

Plaintiffs, in naming 54 defendants, engaged in a disfavored "shotgun" approach to litigation, (ii)

"Plaintiffs advanced a patently inapplicable legal theory—a ministerial exception to qualified

immunity—in defense of the claims against . . . Edgington on summary judgment," and (iii)

"Plaintiffs neither sought nor discovered any information supporting any of the claims against . .

. Edgington." (Mot. for Att'y Fees at 11–13 [ECF No. 246].)

Edgington's first and second arguments do not support an award of attorney's fees. The

fact that Plaintiffs brought claims against 53 other defendants does nothing to establish that

Plaintiffs claims *against Edgington* were frivolous, unreasonable, or without foundation. And

although Plaintiffs did advance an inapplicable legal theory in support of their § 1983 claim,

5

Plaintiffs also advanced an applicable theory—that Edgington acted with deliberate indifference. (*See* Oct. 16, 2014 Op. & Order at 29 [ECF No. 242].)

Edgington's third argument picks up where his second leaves off. Plaintiffs advanced a deliberate indifference theory in support of their § 1983 claim against Edgington. But as the Court noted, Plaintiffs "[did] not even attempt to offer evidence" that would have established a genuine issue of material fact under that theory. (Oct. 16, 2014 Op. & Order at 29.) Edgington argues that Plaintiffs did not have evidence of deliberate indifference (or evidence that Edgington encouraged, authorized, approved, or knowingly acquiesced in unconstitutional conduct by his subordinates) because Plaintiffs did not attempt to collect evidence relevant to those issues. (*See* Mot. for Att'y Fees at 12–14 [ECF No. 246].) From Edgington's perspective, although Plaintiffs may have had a valid basis for initially asserting a § 1983 claim against him, Plaintiffs continued to litigate the claim after their discovery (or lack thereof) made it clear that the claim was frivolous, unreasonable, or without foundation. (*See* Reply in Supp. of Mot. for Att'y Fees at 2–3, 6–7 [ECF No. 270].)

Plaintiffs respond by pointing to the allegations that they made against Edgington in their Amended Complaint and the fact that many of those allegations "were proven through discovery and Defendant Edgington's own deposition testimony." (Mem. in Opp'n to Mot. for Att'y Fees at 1–2 [ECF No. 269].) Plaintiffs continue with examples of what they uncovered in discovery:

> Defendant Edgington acknowledged that he had direct authority over lieutenants and indirect authority over those below him, including deputies. Defendant Edgington also acknowledged that he played a key role in cell cleanliness, as he was responsible for reviewing cell cleanliness reports. Mr. Peterson died, in part, because of the inhumane conditions of his confinement, which Defendant Edgington oversaw.

(*Id.* at 2 (internal citations omitted).) From Plaintiffs' perspective, "[j]ust because this Court

ultimately found that Plaintiffs did not present sufficient evidence to show that Defendant

Edgington knew of a substantial risk of harm and consciously disregarded that risk does not

mean that Plaintiffs' pursuit was baseless or frivolous." (*Id.* (footnote omitted).)

The Court agrees with Edgington's analysis. Plaintiffs had a valid basis for bringing a §

1983 claim against Edgington. The reasonableness of maintaining that claim hinged, however,

on Plaintiffs uncovering evidence through discovery that either (a) Edgington encouraged,

authorized, approved, or knowingly acquiesced in the unconstitutional conduct of a subordinate

or (b) Edgington directly caused the constitutional violation through the active performance of

his duty (i.e., that Edgington acted with deliberate indifference (knew of and disregarded a risk

of serious harm to Peterson)). (*See* Oct. 16, 2014 Op. & Order at 13–14, 26, 29 [ECF No. 242].)

Plaintiffs failed to uncover that information through discovery, (*see id.* at 29), yet they refused to

dismiss Edgington from the case.

Edgington highlights July 29, 2013 as the critical juncture when Plaintiffs should have

known that their case against him was unfounded. (Reply in Supp. of Mot. for Att'y Fees at 3

[ECF No. 270].) Edgington points to July 29 because that was the date when he served his

responses to Plaintiffs' first set of interrogatories. (*Id.*) Edgington avers that he "repeatedly

explained (under oath) that he had no personal knowledge about the decedent and was not

involved in the events leading to his death." (*Id.*) In proposing July 29, though, Edgington

incorrectly implies that Plaintiffs were obligated to accept his statements as conclusive. Plaintiffs

were under no such obligation. Nor were they obligated to dismiss their § 1983 claim against

Edgington upon receipt of his interrogatory responses. Edgington also proposes July 29 because,

from his perspective, the depositions that Plaintiffs conducted after that date could not have

created a genuine issue of material fact as to Edgington's involvement in Peterson's death. (Mot.

for Att'y Fees at 8, 11–14 [ECF No. 246].) As Edgington accurately observes, Plaintiffs failed to even mention Edgington in the majority of their depositions. (*See id.* at 8.) But in several depositions, Plaintiffs did reference Edgington. Plaintiffs inquired about Edgington's competency and posed open-ended questions that could have elicited evidence to support their claims and refute Edgington's interrogatory responses. (*See, e.g.*, Minerd Dep. at 66 [ECF No. 206] ("Did you have any problems with the way [Edgington] ran the show during your five months?"); Rakich Dep. at 115 [ECF No. 196] ("Do you have any reason to doubt that when [Edgington] was working for FCSO that he was competent in his job?"); Rettig Dep. at 128, 171–72 [ECF No. 197] ("Do you believe [Edgington] was competent in his job?") ("Sergeant, is there anything regarding Mr. Peterson's medical emergency or incarceration with FCCC II that we haven't discussed today that you're aware of?") ("Anything else that we haven't talked about?"); Stobart Dep. at 14 [ECF No. 200] ("Do you hold any belief about Doug Edgington's capabilities in terms of being the facility commander of FCCC II?").

The more appropriate date for when Plaintiffs' § 1983 claim against Edgington "clearly became [frivolous, unreasonable, or without foundation]," *Christiansburg*, 434 U.S. at 422, was when Plaintiffs concluded their discovery. Plaintiffs' discovery could have yielded evidence in support of their claim against Edgington. But it did not. (*See* Oct. 16, 2014 Op. & Order at 29.)

Because Plaintiffs failed to dismiss their § 1983 claim against Edgington at the conclusion of discovery, Edgington had to file a motion for summary judgment (and a reply brief) [ECF Nos. 181, 230] to secure the dismissal of Plaintiffs' unfounded claim. The Court, thus, awards Edgington, under 42 U.S.C. § 1988(b), the reasonable attorney's fees incurred in preparing his motion for summary judgment and reply brief on the § 1983 claim.

In addition to attorney's fees incurred as a result of the § 1983 claim, Edgington also

appears to request attorney's fees incurred in defending against Plaintiffs' state law claims. (Mot. for Att'y Fees at 2 (seeking attorney's fees "related to the defense of this case").) Edgington, however, provides no legal basis for collecting those additional fees. (*See generally id.*) By its text, § 1988(b) does not appear to authorize attorney's fees to the party prevailing on state law claims. 42 U.S.C. § 1988(b) ("In any action or proceeding *to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title* . . . ." (emphasis added)). And other district courts in the Sixth Circuit have, likewise, concluded that § 1988(b) does not provide for attorney's fees incurred in defending against state law claims. *See, e.g.*, *Denton v. Rievley*, No. 1:07-cv-211, 2010 WL 5816633, at *1 (E.D. Tenn. Dec. 9, 2010); *Connors v. CBL & Assocs. Mgmt., Inc.*, No. 1:08-cv-172, 2010 WL 1781432, at *1 (E.D. Tenn. Apr. 14, 2010); *Multari v. Cleveland Cmty. Hosp., Cmty. Health Sys.*, No. 1:05-cv-359, 2006 WL 3864813, at *3 (E.D. Tenn. Dec. 14, 2006).

Edgington, moreover, has not sufficiently established in his motion that Plaintiffs' state law claims were frivolous, unreasonable, or without foundation. (*See generally* Mot. for Att'y Fees.) Edgington's arguments focus on the frivolity of Plaintiffs' § 1983 claim. (*See, e.g.*, *id.* at 6, 9 ("Mr. Glasgow . . . explained, correctly, that a supervisor could not be held individually liable under § 1983 simply because he was the supervisor of other defendants that allegedly acted unconstitutionally as to Mr. Peterson.") ("Granting summary judgment, this Court held that Plaintiffs had not come close to establishing evidence showing that Mr. Edgington had caused a constitutional violation."); Reply in Supp. of Mot. for Att'y Fees at 4, 7 [ECF No. 270] ("The U.S. Supreme Court disapproved Plaintiff's theory of *respondeat superior* liability thirty-eight years ago.") ("Judge Frost found that the primary argument advanced by Plaintiff—a ministerial exception to immunity based on Kentucky law—was 'irrelevant' in determining Mr. Edgington's

liability . . . .").) To the extent that Edgington seeks, under § 1988(b), attorney's fees incurred in defending against Plaintiffs' state law claims, Edgington's request is denied.

**B.     Attorney's Fees Under 28 U.S.C. § 1927**

A court may award "excess costs, expenses, and attorneys' fees" under § 1927 against an attorney who "multiples the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. In the Sixth Circuit, an attorney vexatiously multiplies proceedings where he "'knows or reasonably should know that a claim pursued is frivolous, or that his . . . litigation tactics will needlessly obstruct the litigation of non-frivolous claims.'" *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quoting *Jones*, 789 F.2d at 1232). A fee award is also appropriate under § 1927 where "'an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Id.* (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996)) (internal quotation marks omitted). "Simple inadvertence and negligence are not grounds for imposing § 1927 sanctions." *Id.*

Edgington seeks attorney's fees under § 1927 because (i) "Plaintiffs' wide-ranging shotgun approach to this litigation multiplied the litigation in this matter" and (ii) "Plaintiffs' refusal to withdraw their claims against Mr. Edgington in the face of undisputed evidence that he was [not] personally involved in the events related to Mr. Peterson unreasonably multiplied the proceedings." (Mot. for Att'y Fees at 14–15 [ECF No. 246].)

As to Edgington's first argument: suing numerous defendants does not automatically establish that a plaintiff has unreasonably and vexatiously multiplied proceedings. And here, Edgington has failed to sufficiently establish (a) how Plaintiffs' litigation strategy "needlessly obstruct[ed] the litigation of non-frivolous claims" or (b) that Plaintiffs knew or reasonably

10

should have known that their claims against the 53 other Defendants were frivolous. *See Shepherd*, 313 F.3d at 969.

Edgington's second argument, by contrast, is well taken. Plaintiffs insist that naming Edgington in this suit did not unreasonably multiply the proceedings because Edgington, as the facility commander of the jail, oversaw "[a]ll of the deputies who committed violations." (Mem. in Opp'n to Mot. for Att'y Fees at 3 [ECF No. 269].) The Court agrees that Edgington was the facility commander at FCCC. But that fact does nothing to change the Court's conclusion, as discussed earlier, that Plaintiffs and their attorneys reasonably should have known by the end of discovery that their § 1983 claim against Edgington was frivolous. Accordingly, the Court awards Edgington, under 28 U.S.C. § 1927, the reasonable attorney's fees incurred in preparing his motion for summary judgment and reply brief on the § 1983 claim.

Here, as with his fee request under § 1988(b), Edgington presumably moves for attorney's fees incurred to defend against both the § 1983 claim and the state law claims. (*See* Mot. for Att'y Fees at 2 [ECF No. 246].) Edgington, however, has not sufficiently established that Plaintiffs' state law claims multiplied the proceedings in this case unreasonably and vexatiously. (*See generally id.*) Edgington's arguments, as shown above, focus on the frivolity of Plaintiffs' § 1983 claim. (*See, e.g., id.* at 6, 9; Reply in Supp. of Mot. for Att'y Fees at 4, 7 [ECF No. 270].) To the extent that Edgington seeks, under § 1927, attorney's fees incurred in defending against Plaintiffs' state law claims, Edgington's request is denied.

### III.

For the foregoing reasons, Edgington's Motion for Attorney's Fees [ECF No. 246] is **GRANTED IN PART** and **DENIED IN PART**. Edgington may recover under 42 U.S.C. § 1988(b) and 28 U.S.C. § 1927 the reasonable attorney's fees incurred in preparing his motion for

11

summary judgment and reply brief on the § 1983 claim. Edgington shall have **fourteen (14) days** from the date of this order to submit a supplemental brief that details his proposed attorney's fees and the reasonableness of those fees. Plaintiffs shall have **fourteen (14) days** to respond to Edgington's supplemental brief. And Edgington shall then have **seven (7) days** to reply.

     **IT IS SO ORDERED.**


_____9-30-2016_____  
**DATE**

                     _____  
                     **EDMUND A. SARGUS, JR.**  
                     **CHIEF UNITED STATES DISTRICT JUDGE**