UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN C. RUIZ-BUENO, III, et al.,
    Plaintiffs,

v.

ZACK SCOTT, et al.,
    Defendants.

Case No. 2:12-cv-809
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Attorney's Fees. (ECF No. 271.) The Court also reconsiders Defendant Edington's Motion for Attorney Fees. (ECF No. 246.). For the reasons that follow, the Court **DENIES** Defendants' Motion for Attorney Fees, **DENIES** Defendant Edington's Motion for Attorney Fees, and **VACATES** the portion of its September 30, 2016, Opinion and Order ("Attorney Fees Decision") (ECF No. 285) that granted in part Defendant Edington's Motion for Attorney's Fees.

I.

On August 5, 2011, Edward Peterson was arrested on misdemeanor charges and admitted to Franklin County Correctional Center II ("FCCC"). Upon intake at the FCCC, Mr. Peterson underwent standard medical screening. Nurses took his vital signs and interviewed him about his medical history. Mr. Peterson indicated that he had mental health problems but did not inform the nurses that he was taking any medications or that he suffered from any medical issues or injuries. Unbeknownst to the prison officials at that time, Mr. Peterson suffered from congestive heart failure. He also had been diagnosed with bipolar and schizoaffective disorders. Mr. Peterson had been taking medication for both his heart and mental health issues before he was arrested.

The nurses conducting the intake process noticed that Mr. Peterson was answering questions inappropriately. They therefore initiated medical observation. Mr. Peterson was placed under "watch" from August 5, 2011 to August 8, 2011, during which time nurses checked on him every ten minutes (according to FCCC documentation).

On August 8, 2011, Mr. Peterson was transferred to an isolation cell. The parties agreed that isolation cells are used for inmates who pose a threat to themselves or other inmates. It is undisputed that Mr. Peterson remained in the isolation cell until he was found dead in it on September 4, 2011(twenty-eight days later). In its decision on the parties' motions for summary judgment ("Summary Judgment Decision"), the Court stated that Plaintiffs offered expert testimony that Mr. Peterson's heart condition caused him to gain "30 plus pounds of 'edema' fluid weight while he was in jail and prior to his death" and that "[t]he same expert opined that Peterson's condition would have caused swelling of the extremities (often legs and feet) that would make walking and caring for oneself difficult." (ECF No. 242 at 4.) The coroner listed Mr. Peterson's cause of death as heart disease.

In its "Summary Judgment Decision", the Court found:

> [The] evidence supports Plaintiffs' position that Peterson became either unable or unwilling to care for himself during his incarceration. The parties dispute the condition of Peterson's cell in the weeks leading up to his death; however, it appears to be undisputed that Peterson dirtied his cell on more than one occasion. Plaintiffs offered evidence that Peterson spread trash around his cell and defecated in it.
> . . . .
> It is undisputed that, at the time Peterson's body was discovered, his cell was covered in trash and feces. Plaintiffs offered evidence that the Columbus Fire Department ("CFD") (who responded to the medical emergency) was disgusted by the condition of Peterson's cell and even complained to Defendant Scott about the same.

(Summ. J. Decision, ECF No. 242 at 5, 7.)

2

Shortly after Mr. Peterson's death, the Franklin County Sheriff's Office ("FCSO") initiated an internal investigation of the facts surrounding the incident. The Internal Affairs office conducted the investigation and issued a report documenting its findings ("IAB Report"). The IAB Report recommended discipline for more than forty deputies.

Plaintiffs, the administrator of Mr. Peterson's estate and Peterson's son, brought a claim for violations of the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, as well as state-law claims for negligent provision of medical care, wrongful death, and loss of consortium. Plaintiffs brought this action against every individual named in the IAB Report, Major Douglas Edington (the facility commander at FCCC), and Sheriff Zach Scott (the highest ranking officer at FCSO).

Defendants all moved for summary judgment on all claims. One motion was filed by Defendant Edington and one motion was filed by the remaining Defendants. On October 16, 2014, the Court issued its Summary Judgment Decision, which granted summary judgment to all but two individual deputies. The Court allowed Plaintiffs to maintain their § 1983 Eighth Amendment claim, state-law wrongful death claim, and loss of consortium claim against those two deputies. On appeal, the Sixth Circuit partially reversed that decision, concluding that the Court should have granted summary judgment on all claims to all Defendants. (Sixth Circuit Decision, ECF No. 259.)

Defendant Edington moved for attorney fees (ECF No. 246), Plaintiffs opposed that motion (ECF No. 269), and Edington replied in support of it (ECF No. 270). On September 30, 2016, the Court issued its Attorney Fee Decision, which granted in part and denied in part Defendant Edington's motion. (ECF No. 285.) Defendant Edington filed a supplemental brief, outlining the amount of attorneys' fees he believes are due under the Court's Attorney Fee

3

Decision. (ECF No. 286.) Plaintiffs filed a memorandum in opposition to Defendant Edington's supplemental brief (ECF No. 287), and Edington filed a reply in support of his supplemental brief (ECF No. 289). Upon review of the parties' briefing, this Court herein reconsiders its Attorney Fee Decision.

The remaining Defendants also moved for attorney fees (ECF No. 271), and Plaintiffs opposed that motion (ECF No. 274). Defendants filed a reply in support of their motion (ECF No. 275), which is now ripe for review.

## II.

"The 'American Rule' with regard to attorney fees is that each party, including the prevailing party, must bear his or her own attorney fees." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 (1975); *Bunning v. Kentucky,* 42 F.3d 1008, 1013 (6th Cir. 1994)). There are certain statutes that provide for the award of attorney fees to the prevailing party. Defendants all move or moved for attorney fees under one of those fee-shifting statutes, 42 U.S.C. § 1988. Defendants also request or requested attorney fees and sanctions under 28 U.S.C. § 1927.

### A.    42 U.S.C. § 1988(b)

Section 1988(b) of Title 42 allows for the award of "a reasonable attorney's fee" to the prevailing party in various kinds of civil rights cases, including suits brought under 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). A prevailing defendant may obtain attorney's fees under § 1988(b) "'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation,'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)), "or that the plaintiff continued to litigate after it clearly became so," *Christiansburg*, 434 U.S. at 422.

4

> "In applying this standard, courts must balance the policy of encouraging the pursuit of valid civil rights claims against the public interest in discouraging baseless or vindictive lawsuits." *White v. City of Ypsilanti*, 129 F.3d 1266, 1997 WL 705253, at *2 (6th Cir. 1997). "A potential plaintiff's fear of an increased risk of being assessed attorney fees after extensive discovery has taken place and who continues to proceed to a ruling on a summary judgment motion, would create a disincentive to the enforcement of civil rights laws and would have a chilling effect on a plaintiff who seeks to enforce his/her civil rights, especially against a government official." *Riddle v. Egensperger*, 266 F.3d 542, 551 (6th Cir. 2001). "Accordingly, the Supreme Court has cautioned district courts considering prevailing defendants' applications for attorney fees to resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *White*, *supra* at *2 (citing *Christiansburg*, 434 U.S. at 421–22; *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994)) (internal quotation marks omitted). The Sixth Circuit "has further warned that awarding attorney fees against a losing civil rights plaintiff is an 'extreme sanction, and must be limited to truly egregious cases of misconduct.'" *Id.* (citing *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)).

**B.     28 U.S.C. § 1927**

A court may award "excess costs, expenses, and attorneys' fees" under 28 U.S.C. § 1927 against an attorney who "multiples the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. In the Sixth Circuit, an attorney vexatiously multiplies proceedings where he "'knows or reasonably should know that a claim pursued is frivolous, or that his . . . litigation tactics will needlessly obstruct the litigation of non-frivolous claims.'" *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quoting *Jones*, 789 F.2d at 1232). Sanctions are also

5

appropriate under § 1927 where "'an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Id.* (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996)) (internal quotation marks omitted). "Simple inadvertence and negligence are not grounds for imposing § 1927 sanctions." *Id.*

### III.

#### A.  Defendant Edington

In Defendant Edington's Motion for Attorney Fees, he argued that attorney fees were appropriately awarded to him because (i) Plaintiffs, in naming 54 defendants, engaged in a disfavored "shotgun" approach to litigation, (ii) "Plaintiffs advanced a patently inapplicable legal theory—a ministerial exception to qualified immunity—in defense of the claims against . . . Edington on summary judgment," and (iii) "Plaintiffs neither sought nor discovered any information supporting any of the claims against . . . Edington." (Edinton's Mot. for Att'y Fees at 11–13, ECF No. 246.) In its Attorney Fees Decision, the Court explained why "Edington's first and second arguments do not support an award of attorney's fees." *Id.* at 5. The Court, however, "agree[d] with Defendant Edington's analysis" on his third argument and concluded that "Plaintiffs failed to uncover" sufficient evidence to support their claims through discovery, "yet they refused to dismiss Edington from the case" at that time. *Id.* at 7.

Based on this conclusion, the Court granted Defendant Edington a portion of the attorney fees he requested pursuant to both 42 U.S.C. § 1988 and 28 U.S.C. § 1927. Upon reconsideration of that conclusion, the Court finds that Plaintiffs' claims were not frivolous, and even if it could be considered unreasonable for them not withdraw their claims after discovery, that conduct simply does not rise to the flagrant level of misconduct necessary to support the

6

"extreme sanction" of an award of attorney's fees against a civil rights plaintiff. *Jones,* 789 F.2d at 1232. Plaintiffs' conduct in this case does not tip in Defendants' favor the balance of the policy of encouraging the pursuit of valid civil rights claims against the public interest in discouraging baseless or vindictive lawsuits. Plaintiffs' lawsuit cannot be considered baseless or vindictive.

While it is true that the Court's opinion on summary judgment stated that "Plaintiffs do not even attempt to offer evidence that Defendant Edington knew of a substantial risk of harm to Peterson (indeed, they fail to tie the cleanliness issue to any risk of harm of which any Defendant was aware) and consciously disregarded that risk. Nor do Plaintiffs attempt to offer evidence that Defendant Edington encouraged, authorized, approved, or knowingly acquiesced in unconstitutional conduct by his subordinates." These statements, however, do not mean that Plaintiffs' claims were frivolous. Indeed, nowhere in the Summary Judgment Decision does the Court mention, or suggest that Plaintiffs claims were frivolous. And, the Court cannot say with conviction that Plaintiffs failed to uncover evidence relevant to these inquiries, as Plaintiffs show with the following examples:

> Defendant Edington acknowledged that he had direct authority over lieutenants and indirect authority over those below him, including deputies. Defendant Edington also acknowledged that he played a key role in cell cleanliness, as he was responsible for reviewing cell cleanliness reports. Mr. Peterson died, in part, because of the inhumane conditions of his confinement, which Defendant Edington oversaw.

(Mem. in Opposition to Edington's Mot. for Attorney Fees at 1–2, ECF No. 269) (internal citations omitted). Defendant Edington's deposition testimony supports Plaintiffs' position. (Edington Dep. at 18–23, 42, ECF No. 183.) Thus, Plaintiffs may have been mistaken on the law and on what type of evidence was necessary to support their claims, but the Court cannot confidently conclude that their claims were frivolous, unreasonable, or without foundation.

7

In reconsidering its Attorney Fees Decision, the Court is guided by the Supreme Court's instruction to use caution when considering prevailing defendants' applications for attorney fees, and the Sixth Circuit's warning that an award of such fees should be limited to truly egregious cases of misconduct. Accordingly, the Court **VACATES** the portion of its Attorney Fees Decision that granted in part Defendant Edington's Motion for Attorney Fees, and **DENIES** that Motion in its entirety.

## B.     Remaining Defendants

Defendants request their counsels' fees for 300 hours of work that they incurred in drafting their summary judgment motion and reply in support of that motion. Defendants' arguments as to why they are entitled to these fees are similar to those made by Defendant Edington. Basically, that "Plaintiffs claims were frivolous from the case's inception," they engaged in a disfavored "shotgun" approach to litigation, and that Plaintiffs "refus[ed] to seriously re-evaluate the case despite numerous impetuses and invitations to do so." (Defs.' Mot. at 9.) These arguments are not well taken for the same reasons the Court states above and in it Attorney Fees Decision. Consequently, the Court **DENIES** Defendants' Motion for Attorney Fees.

## IV.

For the reasons set forth above, the Court **RECONSIDERS** and **DENIES** Defendant Edington's Motion for Attorney Fees (ECF No. 246), **VACATES** the portion of its Attorney Fees Decision that granted Defendant Edington a part of his attorney fees (ECF No. 285), and **DENIES** Defendants' Motion for Attorney Fees (ECF No. 271).

**IT IS SO ORDERED.**

3-23-2017
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**

8